STATE OF NORTH CAROLINA v. ROY McCAIN, JR.

No. 7826SC779

(Filed 19 December 1978)

**1. Criminal Law § 66.5— show-up—no right to counsel**

   Defendant did not have a constitutional right to counsel at the time of a show-up in a hospital where defendant had not been formally arrested or charged.

**2. Criminal Law § 66.17— suggestive show-up at hospital—independent origin of in-court identification**

   The trial court properly ruled that a robbery victim's in-court identification of defendant and his accomplice was of independent origin and not tainted by a show-up at a hospital where the victim observed defendant and his accomplice over an extended period of time at a restaurant and at the accomplice's apartment where the robbery occurred and remembered many

details about them; the show-up lasted only a few seconds; the victim gave officers an accurate description of defendant and his accomplice and the apartment and its location; the victim did not identify anyone else as the perpetrator of the robbery; the victim did not fail to identify defendant; and the lapse of time between the robbery and show-up was only a few hours.

APPEAL by defendant from *Johnson, Judge.* Judgment entered 25 April 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 6 December 1978.

Defendant was indicted and convicted of common law robbery. Sandra Holloway was also charged with common law robbery, and her case was consolidated with defendant's for trial. The court held a voir dire hearing in the absence of the jury concerning admissibility of the in-court identification of defendant.

Bobby Lee Foust, age 39, testified on voir dire he was in the Jiffy House Restaurant in Charlotte about 9:30 p.m. He had a beer. The lighting in the restaurant was good, similar to the courtroom. He had good vision. A female, Sandra Holloway, sat next to him within reaching distance. She was short, light brown skin, with short hair. He talked to her about 30 minutes. She offered to give him a date for $20 and they agreed on $15. Twice he went to the restroom, and each time on returning defendant was talking to her. Defendant wore a pea-green leather jacket and brown pants. He had a mustache like the one he has now. He was within five feet of defendant. About 10 or 10:30 Foust left the Jiffy House with Sandra and went to her apartment. He sat on a couch while she changed clothes. Two men were outside in the hall arguing. Sandra let them in the apartment. One was the defendant, McCain. He (Foust) started to leave and forced his way through the locked door, but defendant and the other man knocked him down, beat him, and dragged him back into the apartment. They threw a coat over his head and went through his pockets. He had about $300, and it was taken. The two men went into a bedroom, and Sandra told him he could go. He drove home, then went by ambulance to the hospital. Officer Hilderman came to the hospital. He told Hilderman what had happened and gave him a detailed description of defendant and Sandra and the location of the apartment. He identified defendant and Sandra in the courtroom.

Officer Hilderman testified he recieved a call about Foust being in the hospital. He went there and talked with Foust who gave him descriptions of defendant and Sandra and of the apartment. He went to the apartment and found defendant and Sandra. They were brought to the hospital and placed in the hall outside Foust's room. Hilderman told Foust he had two people he wanted him to look at. The door was opened for about five to ten seconds. Foust said he recognized them, that they were the ones who did it. Hilderman then advised defendant and Sandra they were charged with common law robbery, advised them of their rights, and transported them to jail.

The jury returned a verdict of guilty of common law robbery and defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Acie L. Ward, for the State.*

*Gene H. Kendall for defendant appellant.*

MARTIN (Harry C.), Judge.

Counsel for appellant failed to include in the record on appeal the order of the trial court overruling defendant's objection to the in-court identification of defendant. This is in violation of Rule 9(b)(3) (viii) and (x) of the North Carolina Rules of Appellate Procedure. These rules are mandatory. The defendant appellant has the duty to see that the record on appeal is properly made up. *State v. Stubbs*, 265 N.C. 420, 144 S.E. 2d 262 (1965); *State v. Byrd*, 4 N.C. App. 672, 167 S.E. 2d 522 (1969). Defendant does include in the record on appeal a statement that the court ruled the in-court identification was admissible as being based upon Foust's observance of defendant at the Jiffy House and the apartment and not based upon any subsequent identification of defendant. Defendant objected to this ruling.

[2] We hold the trial court properly admitted the in-court identification of defendant. There is ample evidence in the voir dire and before the jury to sustain the court's ruling that the in-court identification was independently based upon Foust's observation of defendant and Sandra at the Jiffy House and at the time of the robbery. Being fully supported by the evidence, this conclusion

must be upheld. *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907, 53 L.Ed. 2d 1091 (1977).

[1]    Defendant did not have a constitutional right to counsel at the time of the show-up in the hospital. Although defendant and Sandra were in custody, they had not been formally arrested or charged. The Sixth Amendment right to counsel only applies at or after the time that adversary judicial proceedings have been initiated against defendant. *Powell v. Alabama*, 287 U.S. 45, 77 L.Ed. 158 (1932); *Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed. 2d 411 (1972); *State v. Henderson*, 285 N.C. 1, 203 S.E. 2d 10 (1974), *modified as to sentence of execution*, 428 U.S. 902, 49 L.Ed. 2d 1205 (1976).

The principles of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694 (1966), have no applicability to this issue. The *Miranda* decision is concerned with Fifth Amendment rights preventing compulsory self-incrimination.

The evidence of in-court identification must also survive the due process test. This is expressed in terms of the "totality of the circumstances" in *Neil v. Biggers*, 409 U.S. 188, 34 L.Ed. 2d 401 (1972). There the Court set out several factors to be considered in determining whether the circumstances surrounding the identification complied with due process requirements. In evaluating the likelihood of misidentification, factors to be considered are: (1) the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention; (2) the manner in which the show-up was conducted; (3) the accuracy of witness's prior description of the criminal; (4) whether witness has identified someone else as the criminal; (5) prior identification of defendant as the criminal; (6) failure to identify defendant on a prior occasion; (7) lapse of time between alleged act and show-up. *State v. Branch, supra.*

In *Manson v. Brathwaite*, 432 U.S. 98, 53 L.Ed. 2d 140 (1977), the Court held even though the out-of-court identification was suggestive it did not per se exclude the evidence. The test remains whether under the "totality of the circumstances" the identification was reliable, even though the show-up was suggestive. "The standard, after all, is that of fairness as required by the Due Process Clause of the Fourteenth Amendment." *Manson, supra.* The testimony of the show-up identification of McCain at the

hospital complies with the standards of *Manson* and was admissible. The show-up was not constitutionally impermissible. It was not so suggestive and conducive to mistaken identification as to offend fundamental standards of decency, fairness, and justice. *Stovall v. Denno*, 388 U.S. 293, 18 L.Ed. 2d 1199 (1967); *State v. Hunt*, 287 N.C. 360, 215 S.E. 2d 40 (1975).

[2]  The trial court's ruling as to the in-court identification of McCain is supported by the principles in the trilogy of *Kirby, Neil,* and *Manson.* Foust was able to see and observe defendant and Sandra over an extended period of time; he gave them close attention and remembered many details about them; the officer did not say he had the two who robbed Foust; the show-up lasted only a few seconds; Foust gave the officers an accurate description of defendant and Sandra and the apartment and its location; Foust did not identify anyone else as the perpetrator of the robbery; he did not fail to identify defendant; the lapse of time between the robbery and the show-up was only a few hours. The evidence supports the finding that the in-court identification of McCain was of independent origin based solely upon Foust's recollection of McCain at the time of the crime. Under the totality of all the circumstances, the in-court identification is not tainted by the hospital show-up.

While counsel do not refer to Article 14 of Chapter 15A of the General Statutes of North Carolina in their briefs, the terms of the statute itself recognize that it does not set out *exclusive* procedures for non-testimonial identification. N. C. Gen. Stat. 15A-272. The facts of this case do not show a violation of this Article in the identification of defendant. *State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977).

No error.

Chief Judge MORRIS and Judge ERWIN concur.